UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| PALOMAR TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-10236-FDS |
| MRSI SYSTEMS, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON DEFENDANT'S INVALIDITY DISCLOSURES

**SAYLOR, J.**

This is a patent infringement dispute between two companies involved in the production and distribution of "die attach" systems. Plaintiff Palomar Technologies, Inc., has brought suit against defendant MRSI Systems, LLC. The complaint asserts a claim for patent infringement pursuant to 35 U.S.C. § 271.[1]

Plaintiff has moved for partial summary judgment as to defendant's invalidity claims on the basis of statutory estoppel under 35 U.S.C. § 315(e)(2). MRSI had previously requested *inter partes* review of the patent on the grounds that it was anticipated and obvious in light of certain prior art. The Patent Trial and Appeal Board granted that request, and then upheld the validity of all the claims but one. Palomar now seeks to estop MRSI from raising invalidity defenses based on the estoppel bar of § 315(e)(2). For the reasons set forth below, the motion will be granted in

---

[1] The complaint also asserts a claim for induced patent infringement and a claim for contributory infringement under § 271.

part and denied in part.

I.  **Background**

   A.  **Palomar Technologies**

Palomar Technologies, Inc., is the owner and assignee of U.S. Patent No. 6,776,327 ("the '327 patent"), entitled "High-Accuracy Placement Method Using Double Pick and Place." The '327 patent was issued on August 17, 2004. (*Id.*).

Palomar provides, among other things, "die-attach solutions" and "precision assembly services." (Compl. ¶ 2). Palomar's systems are used to manufacture "LED, optoelectronic, solar, RF and microelectronic packages in the photonic, wireless, microwave, automotive, aerospace, defense, medical and life science industries." (*Id.*).

   B.  **The '327 Patent**

The '327 patent generally relates to a "method for high accuracy placement of a first workpiece onto a second workpiece for attachment of the two workpieces." (*Id.* col. 1 ll. 7-9). More particularly, the patent relates to a "high accuracy [automated] placement method which utilizes double pick and place of the first workpiece to enhance the final placement accuracy of the first workpiece onto the second workpiece." (*Id.* col. 1 ll. 9-13).

According to the patent, in the production of many electronic applications, dies, or tiny semiconductor devices, are attached to circuit bodies. ('327 patent col. 1 ll. 16-24). The process of attaching a die to a circuit body typically involves two steps: first, in the "pick and place" operation, "the die is picked from a remote location by a tool and placed on the circuit body at the location where attachment is desired." ('327 patent col. 1 ll. 25-28). Next, "the die and circuit body are heated to the melting point of an interposed solder, more specifically termed the die attach material, to form an electrically and thermally conductive die attach connection

between the die and the circuit body." ('327 patent col. 1 ll. 28-32).

According to the patent, automated die-attach techniques were already known and used, although the conventional techniques were not able to perform pick and place operations in a manner sufficiently accurate for emerging industries, such as the optical communications industry. (*Id.* col. 1 ll. 33-35, 42-45). The '327 patent distinguishes itself from these earlier techniques by claiming to provide an automated placement method that is "both time efficient and highly accurate." (*Id.* col. 1 ll. 49-51).

The patent's automated placement method involves two steps. Initially, the "first workpiece, which is preferably a die," is "positioned at the origination location." (*Id.* col. 1 ll. 63-64; *Id.* col. 2 ll. 8). During the "first place step," the first workpiece is "displace[d] . . . from the origination location to an intermediate location different from the origination and attach locations." (*Id.* col. 1 ll. 66-67; *Id.* col. 2 ll. 1-2). Then, during the "second place step," the first workpiece is "displace[d] . . . from the intermediate location to the attach location and the first workpiece is attached to the second workpiece at the attach location." (*Id.* col. 2 ll. 2-5).

### C. MRSI Systems, LLC

MRSI Systems, LLC designs, manufactures, and supplies "fully automated, ultra-high precision die-attach and epoxy dispensing tools," including the "MRSI-M3 Assembly Work Cell." (*Id.* ¶ 2, 12).

The MRSI-M3 Assembly Work Cell is "an automated die bonder" that "utilizes" a technique called the "double-pick and place." (*Id.* ¶ 13). Under this technique, a "pick tool" picks a die from a "waffle pack, Gel-Pak, wafer, or tape and reel," moves the die to "an intermediate location," and places the die "onto a vacuum containing surface." (*Id.*). After the pick tool disengages the die, and the system "utilizes pattern recognition to obtain the

coordinates of the die," the pick tool reengages the die and moves the die to a location on a circuit body. (*Id.*). This method, Palomar contends, infringes on its '327 patent. (*Id.* ¶ 15).

**D.     The *Inter Partes* Review**

On July 6, 2015, Palomar filed this action against MRSI in the Southern District of California. (ECF 1). On October 13, 2015, MRSI petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR") of the patent. (ECF 113-1) (PTAB IPR2016-00043). That petition requested that an IPR be instituted as to all 48 claims of the patent on one or more of six grounds. (ECF 113-1 at 1-9). Specifically, the petition requested review of:

- Claims 1, 3-10, 13, and 24 for anticipation by Isaacs.[2]
- Claims 25, 27-34, and 37 for obviousness over Isaacs.
- Claims 2, 16-18, 26, 40-42, and 48 for obviousness over Isaacs and Mori.[3]
- Claims 11-13, 35-37 for obviousness over Isaacs and Bauks.[4]
- Claims 14, 15, 38, and 39 for obviousness over Isaacs, Mori, and Ginsberg.[5]
- Claims 19-23, 43-47 for obviousness over Isaacs and Taguchi.[6]

(ECF 113-2 at 5). In addition to those five prior art references (Isaacs, Mori, Bauks, Ginsberg, and Taguchi), which formed the basis for one or more of the specific grounds, MRSI's petition

---

[2] U.S. Patent No. 5,446,960.

[3] U.S. Patent No. 4,878,610.

[4] Daniel Z. Bauks, *Automated Hybrid-Circuit Assembly*, 6 MICROELECTRONIC MFG. & TESTING 31, 31-32 (1983).

[5] Gerald L. Gisnberg, *Chip and Wire Technology: The Ultimate in Surface Mounting*, 25 ELEC. PACKAGING & PROD. 78, 82-83 (1985).

[6] U.S. Patent No. 6,148,511.

4

advanced five others (Derby, Janisiewicz, Gamel, Fukui, and Lee). (ECF 113-2 at 4).[7]

On April 7, 2016, the PTAB instituted review on each of the six grounds raised in the petition. (ECF 113-2). On March 29, 2017, the PTAB issued its final written decision. (ECF 113-3). That decision upheld the validity of claims 1-47 and invalidated claim 48. (ECF 113-3). MRSI did not appeal.

### E. MRSI's Invalidity and Non-Infringement Contentions

Palomar's action against MRSI had been stayed by the Southern District of California during the IPR proceedings. On February 5, 2018, that action was transferred to this Court. (ECF 53). On March 30, 2018, the Court issued a scheduling order that instructed the parties to file preliminary invalidity and non-infringement contentions by August 3, 2018. As part of that process, the parties were directed to "identify prior art that anticipates or renders obvious the identified patent claims in question." (ECF 69).

MRSI filed its preliminary invalidity and non-infringement contentions on August 3, 2018. (ECF 104). MRSI contends that all of the claims asserted by Palomar against it are invalid. (ECF 104 at 1). To support its contention, MRSI provides various references to prior art that allegedly render the patent invalid based on anticipation and obviousness. (*Id.* at 5-10).

First, MRSI identifies prior art references that it contends anticipate the claims of the '327 patent. The references are divided into three categories and presented in tables. MRSI also provides a fourth table that lists "documents" that describe the prior art listed in the third table.

---

[7] The five additional prior art references were: (1) U.S. Patent No. 4,919,586 ("Derby"), (2) U.S. Patent No. 5,040,291 ("Janisiewicz"), (3) U.S. Patent No. 6,085,407 ("Gamel"), (4) U.S. Patent No. 5,657,533 ("Fukui"), (5) U.S. Patent No. 5,639,203 ("Lee"). (ECF 113-2 at 4-5).

- Table 1A lists **"Prior Art Patents"** that anticipate the patent's claims:

| Table 1A |
|---|
| U.S. Patent No. 5,035,047 to Harigane et al. |

- Table 1B lists **"Prior Art Publications"** that anticipate the patent's claim:

| Table 1B |
|---|
| Reference |
| WO 01/72097A2 to Yasuharu Ueno (PCT/JP01/02308) |

- Table 1C lists **"Prior Art Knowledge, Uses, Sales, Offers for Sale, and Inventions by Others"** that anticipate the patent's claims:

| Table 1C |
|---|
| MRSI-505 |
| MRSI-5005 |

- Table 1D lists **documents** and a **video** as **"evidence of the relevant features and functionality"** of the **"systems"** listed in Table 1C.

| Table 1D | |
|---|---|
| Document Description | Bates Number |
| Programmer's Guide MRSI WorkCell | MRSI0000116 |
| Video demonstrating similarity between MRSI-505 and MRSI M3 | MRSI0005610 |
| Programming and Operations Manual MRSI 505 | MRSI0001026 |
| Programming and Operations Manual MRSI 505 | MRSI0001555 |
| Technical Manual MRSI 505 DOS | MRSI0002085 |
| Service Manual MRSI 505 | MRSI0002717 |
| Service Manual MRSI 505 | MRSI0002855 |
| M3/M5 WorkCell Technical Reference Manual | MRSI0003072 |
| WorkCell Basic Programming Manual | MRSI0005224 |

Second, MRSI identifies prior art references that it contends render the claims obvious. MRSI divides those references into two tables:

- Table 2A lists **"Prior Art Patents and Patent Publications"** that render the claims obvious:

| Table 2A |
|---|
| U.S. Patent No. 4,878,610 to Mori et al. |
| U.S. Patent No. 4,893,396 to Ainsworth |
| U.S. Patent No. 4,919,586 to Derby |
| U.S. Patent No. 5,035,047 to Harigane et al. |
| U.S. Patent No. 5,040,291 to Janisiewicz et al. |
| U.S. Patent No. 5,639,203 to Lee |
| U.S. Patent No. 5,446,960 to Isaacs et al. |
| U.S. Patent No. 5,657,533 to Fukui et al. |
| U.S. Patent No. 5,864,944 |
| U.S. Patent No. 6,085,407 to Gamel et al. |
| U.S. Patent No. 6,148,511 to Taguchi |

- Table 2B lists **"Prior Art Publications"** that render the claims obvious:

| Table 2B |
|---|
| Daniel Z. Bauks, "Automated Hybrid-Circuit Assembly," Microelectronic Manufacturing and Testing (1983) |
| Gerald L. Ginsberg, "Chip and Wire Technology: The Ultimate in Surface Mounting," Electronic Packaging & Production (1985) |
| WO 01/72097A2 to Yasuharu Ueno (PCT/JP01/02308) |
| Japanese Patent Number JP2002141700A |

In total—not counting the documents listed in Table 1D (because MRSI does not contend that they are prior art), and accounting for references listed in more than one table—MRSI provides 17 references to prior art that it contends invalidate the claims of the patent. The 17 references include the ten references MRSI advanced to the PTAB during IPR. Those ten references, in turn, include the five references that MRSI specifically asserted as grounds before

7

the PTAB.

On August 27, 2018, Palomar filed a motion for partial summary judgment. Palomar contends that MRSI is barred from challenging the validity of the patent's claims under 35 U.S.C. § 315(e)(2).

## II.  Analysis

The America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), created the present IPR process. As part of the statute, Congress included an estoppel provision to avoid duplicative validity challenges before the PTAB and the district courts. Under the statute, "[t]he petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

Notwithstanding the straightforward language of the statute, its application has been considerably complicated by the PTAB's former practice of instituting IPRs as to only some of the challenged grounds of a patent.

In 2016, the Federal Circuit ruled that estoppel did not apply to grounds on which the PTAB declined to institute review. *Shaw Indus. Grp. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1052-53 (Fed. Cir. 2017) (discussing *Synopsys* and *Shaw* in the context of post-grant reviews).

In 2018, however, the Supreme Court, interpreting 35 U.S.C. § 318(a), held that the PTAB did not have the authority to institute review as to only certain claims, but "*must* address

*every* claim the petitioner has challenged." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). The Court did not explicitly rule that the PTAB must institute review on every ground asserted in the petition. Nonetheless, the Federal Circuit has observed that "[e]qual treatment of claims and grounds for institution purposes has pervasive support in *SAS*." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1360 (Fed. Cir. 2018).

In the wake of the *SAS* decision, the Patent and Trademark Office issued a "guidance" in April 2018 announcing that any petition instituted would be instituted on all claims and all grounds raised. U.S. Patent & Trademark Office, Guidance on the Impact of SAS on AIA Trial Proceedings (Apr. 26, 2018), https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/trials/guidance-impact-sas-aia-trial. The Federal Circuit has also endorsed the view that *SAS* "interpret[ed] the statute to require a simple yes-or-no institution choice respecting a petition, embracing all challenges included in the petition." *PGS Geophysical*, 891 F.3d at 1359-60; *BioDelivery Sci. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1209-10 (Fed. Cir. July 31, 2018) ("We agree that *SAS* requires institution on all challenged claims and all challenged grounds."). The Federal Circuit has further held (1) that "it is appropriate to remand to the PTAB to consider noninstituted claims as well as noninstituted grounds" and (2) that a party has not "waived its right to seek *SAS*-based relief due to failure to argue against partial institution before the PTAB." *Id.* at 1208.

Palomar contends that MRSI should be barred from relying on any of the 17 prior art references as grounds for invalidity. The 17 references are best understood as containing three groups: (1) those that the PTAB actually discussed in its decision (five); (2) those that were raised in the petition, but not discussed in the decision (five); and (3) those that were not raised in the PTAB proceeding (the remaining seven).

9

### A. Grounds Actually Addressed in the PTAB's Final Written Decision

The first set of prior art references may be readily addressed. MRSI is clearly estopped from asserting any grounds in this lawsuit as to which the PTAB actually instituted review and issued a final written decision. *See* 35 U.S.C. § 315(e)(2).

MRSI's contentions on this point are unclear. On the one hand, it has asked the Court to deny Palomar's motion "on all grounds." (ECF 139 at 2). But in its memorandum opposing summary judgment, it makes no argument as to why the grounds already considered by the PTAB should not be subject to estoppel under § 315(e)(2). Nor are any such grounds apparent, in light of the clear command of the statute.

Accordingly, and based on the statutory estoppel bar of 35 U.S.C. § 315(e)(2), summary judgment will be granted in favor of Palomar as to the six grounds, based on five prior art references, specifically asserted in the IPR review.

### B. Grounds Raised But Not Addressed in the PTAB's Final Written Decision

The next question is whether MRSI should be estopped from arguing invalidity based on the five prior art references that it advanced in its IPR petition but that did not specifically form the basis of any of the six requested grounds.

As noted, before *SAS*, the PTAB had a practice of sometimes instituting review on only some of the challenged grounds. According to the Federal Circuit, when that happened, the non-instituted grounds were not subject to the estoppel bar. *HP Inc. v. MPHJ Tech. Invs., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016) ("[T]he noninstituted grounds do not become a part of the IPR. Accordingly, the noninstituted grounds were not raised and, as review was denied, could not be raised in the IPR. Therefore, the estoppel provisions of § 315(e)(1) do not apply."). However, now that the practice of partial institution has been declared by the Supreme Court to be contrary

to the statute, the appropriate application of the estoppel statute to partially instituted IPRs is unclear.

On multiple occasions since the *SAS* decision, the Federal Circuit has remanded cases to the PTAB for it to consider noninstituted grounds. *See BioDelivery*, 898 F.3d at 1209 (citing cases). In so doing, the Federal Circuit has made clear that parties do not "waive[] [their] right to seek *SAS*-based relief due to failure to argue against partial institution before the PTAB." *Id.*

This case, however, is in a considerably different posture. This is not an instance where the PTAB, on its own, elected to institute a partial review. Rather, MRSI itself both (1) brought certain prior art references to the attention of the PTAB and (2) affirmatively elected not to assert those prior art references as specific grounds for invalidity.

MRSI's petition for review was filed with the PTAB on October 13, 2015. The petition sought review of all claims, asserting six grounds based on five prior art references. (ECF 113-1).[8] MRSI submitted an appendix with the petition that (among other things) included five additional prior-art references (Derby, Janisiewicz, Gamel, Fukui, and Lee). (*Id.* at Appx. B, citing Exs. 1008-12).

On April 7, 2016, the PTAB issued its decision to institute *inter partes* review. In its decision, the PTAB noted that MRSI "advances the following references as prior art," and listed the ten at issue here. (ECF 113-2 at 4). It then observed: "The petition asserts the following grounds of unpatentability," and set forth five references (Isaacs, Mori, Bauks, Ginsberg, and Taguchi) and the six asserted grounds for invalidity (one for anticipation and five for obviousness). (*Id.* at 5).

In a footnote, the PTAB observed: "Petitioner relies on Derby, Janisiewicz, Fukui, and

---

[8] As noted, those five prior-art references were Isaacs, Mori, Bauks, Ginsberg, and Taguchi.

Lee to show background of the technology and common knowledge in the art." (*Id.* at 5, n.1). It cited to two places in the petition where MRSI had done exactly that. And it noted that MRSI also relied on the declaration of Stephen Derby, Ph.D., to whom the Derby patent had been issued. It did not, however, mention the Gamel reference.

On March 29, 2017, the PTAB issued its Final Written Decision. As noted, it determined that Claims 1-47 were "not unpatentable" and that Claim 48 was unpatentable. MRSI did not appeal that decision.

In short, MRSI was aware of the five "background" prior art references at issue, and indeed actually provided those references to the PTAB.[9] MRSI could have—but elected not to—assert any of those five "background" references as specific grounds for invalidity. It simply chose not to. This is not a situation, therefore, where a party sought to assert certain references as grounds, and the PTAB declined to institute review on all grounds asserted. Instead, MRSI made a strategic decision (1) to ask the PTAB to consider the five "background" references, but (2) to decline to assert those five references formally as grounds.

Under the circumstances, the Court can see no unfairness in applying the estoppel bar to those five references. Otherwise, the statutory phrase "any ground . . . that the petitioner . . . reasonably could have raised" has no meaning at all. *See* 35 U.S.C. § 315(e)(2). And a contrary ruling would reward gamesmanship, rather than advancing the goals of the IPR process, or indeed the fair and efficient resolution of patent disputes.

It is true that *SAS* was decided after MRSI's opportunity to appeal the PTAB's decision

---

[9] While it is true that the PTAB did not refer specifically to the Gamel reference, the Court sees no reason why it should be treated any differently, under the circumstances, from the other four "background" references.

12

had expired.[10]  Again, however, this is not a situation in which the PTAB instituted partial review over MRSI's objection.  Indeed, MRSI itself framed the scope of the review, and the PTAB accepted that scope.  Under the circumstances, MRSI could hardly have mounted a successful appeal to the PTAB's decision as to the scope of review.

Accordingly, and based on the statutory estoppel bar of 35 U.S.C. § 315(e)(2), summary judgment will be granted in favor of Palomar as to any challenges of invalidity arising out of the five "background" prior art references (Derby, Janisiewicz, Gamel, Fukui, and Lee) that MRSI submitted to the PTAB but that were not asserted as specific grounds.

### C. Grounds Not Raised Before the IPR

The remaining question is whether MRSI should be estopped from arguing invalidity based on grounds that it "reasonably could have raised" during the IPR, but did not.

Prior to *SAS*, a minority of district courts had held that only those grounds actually raised in the petition could count as grounds that "reasonably could have been raised."  Under that view, a petitioner could hold back certain grounds from its petition and be free to raise them later before a district court.  *E.g.*, *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, 2018 WL 283893, at *3-4 (D. Mass. Jan. 2, 2018) (citing cases that held otherwise); *Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 855-57 (N.D. Cal. 2017).  *But see Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, 2017 WL 3278915, at *6-8 (N.D. Ill. Aug. 2, 2017) ("[W]hile it makes sense that noninstituted grounds do not give rise to estoppel because a petitioner cannot— through no fault of its own—raise those grounds after the institution decision, when a petitioner simply does not raise invalidity grounds it reasonably could have raised in an IPR petition, the

---

[10] The PTAB issued its final decision on March 29, 2017.  Either party then had 60 days to file a notice of appeal.  35 U.S.C. §§ 142, 319; 37 C.F.R. § 90.3; Fed. R. App. P. 4(a)(1)(B)(ii).  *SAS* was decided on April 24, 2018, long after the parties' 60 day window to appeal had expired.

situation is different."); *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, 2017 WL 1045912, *11-12 (D. Del. Feb. 22, 2017).

After *SAS*, that cannot be correct. Because the PTAB must now institute review (if at all) on all grounds, there will be no such thing as a ground raised in the petition as to which review was not instituted.[11] Accordingly, for the words "reasonably could have raised" to have any meaning at all, they must refer to grounds that were not actually in the IPR petition, but reasonably could have been included.

The question then becomes what is the standard for determining whether a ground not included in a petition reasonably could have been raised. In congressional debates, one of the key architects of the America Invents Act explained that "reasonably could have raised" is meant to include any patent or printed publication that a petitioner actually knew about or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). Several district courts have adopted this as the standard. *See, e.g.*, *Parallel Networks Licensing*, 2017 WL 1045912, *11-12; *Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *7-8 (N.D. Ill. Mar. 18, 2016). This Court will do the same.

It appears that the issue of whether a skilled, diligent search reasonably should have uncovered a reference is a question of fact. Palomar has presented attorney arguments as to the relative ease with which a skilled searcher would have found at least some of the prior art references MRSI raises now for the first time.[12] But despite having the burden to show that

---

[11] The PTAB has the option of wholly declining to institute any IPR. *See* 35 U.S.C. § 314. In that case, estoppel would not apply, because the review would not "result[] in a final written decision." 35 U.S.C. § 315(e).

[12] MRSI has filed a motion to strike portions of the declaration of Palomar's attorney, Jan P. Weir. Because the Court will deny summary judgment as to the prior art references discussed in Weir's declaration—that is, the prior art references not raised by MRSI during the IPR—the motion to strike will be denied as moot.

14

estoppel applies, it has presented no expert affidavits or other factual evidence as to that issue. *See Clearlamp*, 2016 WL 4734389, at *9 ("[Plaintiff] must present evidence that a skilled searcher's diligent search would have found the [newly raised reference]. One way to show what a skilled search would have found would be (1) to identify the search string and search source that would identify the allegedly unavailable prior art and (2) present evidence, likely expert testimony, why such a criterion would be part of a skilled searcher's diligent search.").

MRSI, by contrast, has submitted evidence that suggests it hired at least two patent search firms—KramerIP Search and TechMark Global LLC—to conduct searches for relevant prior art. There thus appears to at least be a genuine question of material fact as to whether a diligent, skilled searcher would have found the relevant references at the time the IPR was filed.

Therefore, to the extent Palomar is contending that MRSI is estopped from relying on the seven previously unfound references as grounds for invalidity, the motion for summary judgment will be denied.

D. **Whether MRSI Manuals Can Be Asserted as Prior Art References**

A final issue remains: the parties appear to disagree as to whether MRSI intends to assert documents related to the MRSI 505 and MRSI 5005 systems—that is, those references listed in Table 1D—as invalidating prior art.

Palomar contends that "MRSI intends to rely on its product manuals listed in . . . its Disclosures" and that because MRSI was obviously aware of its own manuals, it reasonably could have raised them as grounds for invalidity in the IPR. (ECF 112 at 15).[13]

MRSI contends that it should be allowed to rely on the products themselves—that is, the

---

[13] Palomar refers to the manuals as "listed in Table 2B" of MRSI's disclosure filing. Table 2B of MRSI's disclosure filing does not list product manuals; rather, the manuals are listed in Table 1D. The Court will assume, therefore, at least for the purposes of summary judgment, that Palomar is referring the manuals listed in Table 1D.

15

MRSI 505 and MRSI 5005 systems—as invalidating prior art. As to the product manuals, however, MRSI seems to suggest that the manuals serve as "evidence of the relevant features and functionality of the system[s]" listed in Table 1C, as opposed to prior art themselves. (ECF 104 at 7). Given that description, and in light of the fact that MRSI clearly labels all of its other "references" as "prior art," it appears that the issue is moot.

As to the products themselves, Palomar does not seek to bar MRSI from relying on them as prior art. Indeed, in concluding its memorandum, Palomar writes: "based upon an application of the plain meaning of § 315(e)(2) to the undisputed facts in this case, MRSI is statutorily barred from challenging the validity of any asserted claim of the '327 Patent based upon the alleged prior art listed in Tables 1A, 1B, 1D, 2A, and 2B of MRSI's Disclosures." In addition, Palomar provides no argument as to why MRSI would be precluded from relying on the systems as invalidating prior art. Accordingly, it appears that there is no dispute that MRSI may rely upon the MRSI 505 and 5005 products to show invalidity.

### III. Conclusion

For the foregoing reasons, Palomar's motion for partial summary judgment based on defendant's invalidity disclosures is GRANTED in part and DENIED in part. Pursuant to the statutory estoppel bar of 35 U.S.C. § 315(e)(2), MRSI is estopped from asserting that any claim of the '327 patent is invalid for anticipation or obviousness based on the following prior art references:

1. U.S. Patent No. 5,446,960 to Isaacs et al.;
2. U.S. Patent No. 4,878,610 to Mori et al.;
3. U.S. Patent No. 6,148,511 to Taguchi;
4. U.S. Patent No. 4,919,586 to Derby;

5. U.S. Patent No. 5,040,291 to Janisiewicz et al.;

6. U.S. Patent No. 6,085,407 to Gamel et al.;

7. U.S. Patent No. 5,657,533 to Fukui et al.;

8. U.S. Patent No. 5,639,203 to Lee;

9. Daniel Z. Bauks, *Automated Hybrid-Circuit Assembly*, 6 MICROELECTRONIC MFG. & TESTING 31, 31-32 (1983); and

10. Gerald L. Gisnberg, *Chip and Wire Technology: The Ultimate in Surface Mounting*, 25 ELEC. PACKAGING & PROD. 78, 82-83 (1985).

The motion is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: March 27, 2019
United States District Judge